Filed 6/25/14  Hollfelder Family Trust v. Super. Ct. CA2/4
## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| HOLLFELDER FAMILY TRUST et al., <br><br> Petitioners, <br><br> v. <br><br> THE SUPERIOR COURT OF LOS ANGELES COUNTY, <br><br> Respondent; <br><br> RODOLFO GUTIERREZ et al., <br><br> Real Parties in Interest. | B222404 <br><br> (Los Angeles County <br> Super. Ct. No. BC371614) <br><br> MODIFICATION ORDER <br> (NO CHANGE IN JUDGMENT) |

THE COURT*

It is ordered that the opinion filed herein on June 24, 2014, be modified as follows:

1. On page 1 in the attorney listing for Petitioners, please modify as follows:

"Nemecek & Cole, Frank W. Nemecek, Mark Schaeffer, Lucy H. Mekhael; Musick Peeler & Garrett and Cheryl A. Orr for Petitioners."

There is no change in the judgment.

_____

\*EPSTEIN, P. J.    MANELLA, J.    EDMON, J.\*\*

_____

\*\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 6/24/14 (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| HOLLFELDER FAMILY TRUST et al., | B222404 |
| Petitioners, | (Los Angeles County Super. Ct. No. BC371614) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| RODOLFO GUTIERREZ et al., | |
| Real Parties in Interest. | |

ORIGINAL PROCEEDING in mandate. Judith C. Chirlin, Judge. Petition granted and matter remanded to trial court with directions.

Nemecek & Cole, Frank W. Nemecek, Mark Schaeffer, and Lucy H. Mekhael for Petitioners.

No appearance for Respondent.

Law Offices of Moises Vazquez and Moises Vazquez for Real Parties in Interest.

Bea and Thomas (Tom) Hollfelder, their trust, and Tom's business, Tiger Racing Company, LLC (together, the Hollfelders), appeal from a judgment after bifurcated trial awarding property to Carlota (Carla) Curiel Gutierrez and her husband, Rodolfo Gutierrez (together, the Gutierrezes). The court credited Carla's claim that Bea had given her the property as a gift. After denying the Hollfelders' motion for summary judgment and conducting a bifurcated trial on the equitable claims, the court held the Hollfelders were estopped from disclaiming the gift. The Hollfelders argue the gift was barred by the statute of frauds and Family Code section 1102.[1] As we shall explain, since the court's decision did not resolve all of the parties' legal claims, we treat this appeal as a petition for writ of mandamus. We shall direct the trial court to set aside its earlier ruling that a valid gift of real property had occurred, reinstate the Hollfelders' cause of action for ejectment, and conduct a trial on the remaining legal claims.

## FACTUAL AND PROCEDURAL SUMMARY

Sometime after Bea and Tom married, they established the Hollfelder Family Trust, serving as its only trustees. Their trust held title to several properties, including a house located at 1543 East Palm Drive in Covina (the Palm house).

In 1989, Carla began working for Bea. Over the next 17 years, her responsibilities included cleaning various properties, preparing meals, caring for Bea's mother and grandchildren, providing transportation, doing laundry, running errands, accompanying Bea to casinos, and conducting banking business on her behalf. During this time, Bea and Carla's relationship became close. Carla viewed Bea as a sister, and the Hollfelders attended Gutierrez family gatherings. Tom played no part in Bea's hiring of Carla, or in the management of Carla's work.

Sometime in 1994, the Palm house became vacant after Bea's daughter, Cathy, moved out. The testimony at trial conflicted as to what happened next. Carla testified

---

[1] All subsequent statutory references are to the Family Code, unless otherwise indicated.

2

that in June 1994, Bea called to say that she and Tom had decided to give the Palm house to Carla. Bea said she was giving her the house because of the work Carla had done for the Hollfelders in the past, which she was continuing to perform. According to Carla, Bea did not talk about rent. The next day, Bea told Carla that she and Tom had decided to give her the house. After Bea asked Carla how much she paid to rent her apartment, Carla said $800 per month. Carla testified that Bea responded, "'That's the same payment you're going to do monthly, and that's going to go directly towards the gift.'" Carla did not understand why she had to pay Bea monthly, or when title would transfer to her name. Carla did not ask for paperwork at that time, because Bea said the house was already in Carla's name. In addition to the $800 monthly payment, they agreed that Carla would be responsible for all utilities, including water, electricity, telephone, yard maintenance, garbage, and sewer. Carla thought she had to work for Bea for the rest of her life in order to keep the Palm house.

Rodolfo testified that Bea told him the Palm house was Carla's, and the monthly payments were for a gift tax when the transfer of title would be made. He also testified that the Hollfelders never gave the house to him, a statement that is consistent with Carla's testimony that Bea gave the house to her.

Bea testified to a different course of events. After she told Carla that Cathy had moved out, Carla asked about the Palm house. Bea told her she was undecided on whether to rent or sell it. Bea knew Carla had been living in an apartment in Whittier, which required a long commute to transport her children to school. As a result, Bea decided to rent the Palm house to Carla for $800 per month, an amount based on the rent Carla paid for her apartment, and that Carla was to pay for all utilities and minor repairs. The Hollfelders were to pay for major repairs, as they customarily did when renting their properties. At trial, the Hollfelders presented their tax forms from 1995, 1996, and 2001 as evidence that they treated Carla's monthly payments as rental income.

Tom testified that he and Bea never discussed giving the Palm house to Carla, or arranging it as compensation for her labor, although Bea once told him that she wanted

3

Carla to have the house when Bea died. Tom told Bea that he did not agree with that wish. Finally, Tom testified that when renting their properties, the Hollfelders ordinarily used written agreements when the tenants were strangers, but no writing when the tenants were familiar.

Carla moved into the Palm house on July 4, 1994. She continued to work for the Hollfelders six days per week. Carla wrote $800 monthly checks to Bea, sometimes indicating "rent" on the memo line. On other checks, she wrote the month, or a combination of the month and "rent." Sometime in 1996, Carla told Bea she could no longer afford $800 per month, so they agreed to reduce the payment to $700. Bea testified that between 1997 and 1998, she deducted "partial rent" from Carla's paychecks, with Carla's permission, but without a written agreement, because Carla was not paying the full amount each month. In November 2005, Carla started to write "house" on the memo line.

Between 1998 and 2006, Carla made several improvements to the Palm house. She replaced the carpet, painted the interior, changed lighting fixtures, and made various plumbing repairs. In 1998, she removed two trees from the yard. In 2002, Carla replaced the driveway, sidewalk, and walkways on the sides of the property. When Carla was considering landscaping the backyard, Bea told her, "Do whatever you want. It's your house." As a result, Carla added a fountain and several plants. In 2005, Carla replaced the interior flooring. Sometime later, Bea commented that she liked Carla's choice of tile. And in 2006, Carla remodeled the kitchen, including cabinet resurfacing, new tiling, and electrical work. She also repainted the ground floor interior.

Carla testified that Bea was aware of the improvements because she and Carla would talk about them, and Bea would notice them when she visited the house for parties. Bea told Carla she (Carla) could make improvements, saying "It's your house, you fool." Carla testified that when Rodolfo talked to Bea about buying another house, Bea told him, "Why do you want to buy a house if Carla already has hers? That's her house." She told Carla, "Why are you going to get into problems with [buying a] house if you have

4

yours?" On another occasion, Bea also said, according to Rodolfo, that the Palm house was in Carla's name. Rodolfo testified that upon seeing that the kitchen was dirty, Bea once told him, "Carla's house shouldn't be in this condition." Bea testified to visiting the Palm house and knowing of some, but not all, of the improvements.

Tom testified that between 1994 and early 2006, he did not see any changes to the property, or talk with Bea about them. He could not recall visiting the property between 1994 and 2007, except after the Gutierrezes initiated the present litigation. Carla and Rodolfo testified that in October or November 2006, Rodolfo asked Tom for a loan to pay off some debt. Tom asked Rodolfo why he had spent "so much money." Rodolfo said he had used his credit card to "fix[] the floor of the house," "change[]" the kitchen, and complete "repairs in the driveway, and the back part of the house." When Rodolfo told Tom that he wanted to replace the roof, Tom replied, "Is it leaking?" Then Carla said she wanted to change the windows because they were old. Tom encouraged Rodolfo to work with his friends to replace the roof for a low price, and offered to pay for half of it.

During her occupancy of the Palm house, Carla testified that Bea received bills for work on the plumbing and air conditioning, and forwarded them to Carla, saying that she had no reason to pay them because it was not her house. On one occasion Bea received a plumbing bill, paid it, and deducted the amount from Carla's paycheck. In 1999, Carla contacted her neighbor, Wesley Rousses, to paint the outside of the Palm house. Bea paid half of the bill, which was addressed to her, after she offered to do so. Consistent with their agreement, Carla paid all utilities and gardening after the first few months of occupancy, once the prior service contracts were terminated, and through the time of the trial. The parties stipulated at trial that from 1994 to 2008, the Guiterrezes paid "all the utilities." Carla testified that she did not pay any property taxes because she thought her monthly payments to Bea served that purpose. At trial, the Hollfelders' counsel read part of Carla's deposition, in which she admitted that the Hollfelders paid homeowner insurance and the property taxes. Carla also testified that the Hollfelders helped her pay

5

for expenses unrelated to the Palm house, including various gifts, and loaned her money on several occasions.

Bea testified that she paid for major repairs to the Palm house, including painting, plumbing, pest control, an air conditioning unit, and a new water heater. On appeal, the Hollfelders claim they paid for insurance and property taxes. They cited their tax forms, in which they listed rental income and taxes paid, and the Gutierrezes' tax returns showing no payments for property taxes or insurance.

Additional evidence also supports the inference that Bea considered the Palm house to be Carla's, including testimony by Carla's daughters who said Bea referred to it as "Carla's house." Carla's neighbor, Rousses, said Bea referred to the Palm house as "Carla's house," and said that Carla could do what she wanted with it. Rousses also said that Carla had claimed ownership of the house.

Sometime in 2005, the Hollfelders prepared to spend six months in Wisconsin. Before they left California, Tom told Carla to think about cleaning their Palm Springs condominium to keep busy. Tom previously had not talked to Carla about her employment with the Hollfelders. While in Wisconsin, the Hollfelders began to take issue with Carla's work. After the Hollfelders returned, Tom told Carla that Bea was no longer her boss. According to Carla, Tom questioned her about the details of her job duties and performance. He noticed several unauthorized charges on the Hollfelders' credit card, which Bea had allowed Carla to use for occasional dinners with Rodolfo. According to Carla, Tom said he would no longer pay Carla's medical expenses, and she had to bring her own lunch to work. In addition, he said Carla needed to record the details of her work. Tom testified that he merely wanted her to report on her work tasks and how long it took to complete them. On December 29, 2006, Carla quit working for the Hollfelders. She spoke with Bea a few days later, but they did not discuss the Palm house.

In January 2007, the Hollfelders served Carla with a three-day eviction notice. Then, in February 2007, they filed a sixty-day notice of termination of tenancy. When

6

the Hollfelders brought an unlawful detainer action against Carla, the Gutierrezes responded with a suit against the Hollfelders in May 2007. The complaint alleged causes of action for (1) declaratory and injunctive relief, (2) quiet title, (3) fraud, (4) constructive trust, (5) conversion, (6) money had and received, and (7) reimbursement for wages, labor, and services provided. The Gutierrezes argued that Bea had given the Palm house to Carla in 1994 for past services rendered.

The Hollfelders' answer raised several affirmative defenses, including the statute of frauds (Civ. Code, § 1624) and illegal contract (§ 1102, subd. (a)).[2] The Hollfelders filed a cross-complaint against the Gutierrezes, asserting ejectment and tort causes of action. They alleged the Gutierrezes breached their oral rental agreement and an unrelated promissory note; Carla committed constructive fraud by using the Hollfelder credit card; the Hollfelders were entitled to an accounting of Carla's use of the credit card; the Gutierrezes owed them $50,000 for money had and received; Carla owed them $15,106 plus interest for an unpaid loan; and the Gutierrezes had unjustly benefitted by refusing to vacate the Palm house.

In August 2007, the Gutierrezes served a request for production of documents on the Hollfelders. Among other requests, they expressly sought production of the Hollfelder Family Trust instrument. The Hollfelders objected that the request violated their privacy; was overbroad, unduly burdensome, oppressive, and harassing; was irrelevant; and would not lead to admissible evidence. During a hearing on the Gutierrezes' motion to compel further responses, the Hollfelders' attorney said that the trust document did not mention a gift to Carla. As a result, the court ordered the

---

[2]     Section 1102 states, in relevant part, that except as provided in section 761, "either spouse has the management and control of the community real property, . . . but both spouses . . . must join in executing any instrument by which that community real property or any interest therein is leased for a longer period than one year, or is sold, conveyed, or encumbered." (§ 1102, subd. (a).) Section 761 extends these community property principles to trusts, except when the trust instrument provides otherwise. (§ 761, subd. (a).)

7

Hollfelders to respond with a statement under oath verifying that information, which they did.

The Hollfelders filed a motion for summary judgment or summary adjudication on the seven causes of action in the Gutierrezes' original complaint. They argued there was no clear and convincing evidence that Bea had given the Palm house to Carla; the alleged gift violated section 1102; the statute of frauds barred any oral conveyance; and the alleged gift failed because it contained uncertain and indefinite terms.

In their opposition to the summary judgment motion, the Gutierrezes argued the statute of frauds did not apply to actions to quiet title; they had obtained title through adverse possession; the oral gift was valid since the Hollfelders were equitably estopped from raising the statute of frauds defense; and section 1102 did not prohibit the gift. The Hollfelders replied with an excerpt of the trust instrument, which stated that "the Trustees shall have no more extensive power over any property transferred to the Trust Estate than either of the Trustors would have had under California Civil Code Sections 5125 and 5127." Those provisions required the consent of both spouses for a transfer of community property.[3]

The trial court denied the Hollfelders' motion for summary judgment, finding that "numerous triable issues of disputed facts" remained, including whether equitable estoppel applied as an exception to the statute of frauds. Sometime later, the court granted the Hollfelders' motion to bifurcate the issues, so that the equitable claims (for declaratory and injunctive relief, quiet title, constructive trust, and ejectment) would be decided first. The resolution of these claims was expected to resolve the remaining legal claims that were based on Carla's interest in the property.

---

[3] Former Civil Code sections 5125 and 5127 are now included in the Family Code as sections 1100 and 1102. (See *In re Marriage of Wolfe* (2001) 91 Cal.App.4th 962, 966.)

In June 2009, the matter came before Judge Judith C. Chirlin for a bifurcated trial on the equitable causes of action. The trust instrument, including the excerpt produced during the motion for summary judgment, was not presented for admission into evidence.

After a five-day court trial in September 2009, the court issued its decision. It stated, "Because the testimony regarding the circumstances surrounding the Palm Drive House was so conflicting, the Court must carefully consider the credibility of the witnesses. The critical witnesses were Carla, Bea and Tom." The court discredited the testimony of Tom. It observed that Bea was nervous while testifying, and appeared to be less than candid for fear of telling the truth in front of Tom. The court noted that Bea was unable to testify fully to several conversations she had with the Gutierrezes that were critical to the disposition of the Palm house. In contrast, the court found the testimony of Carla to be credible.

As a result, "by a preponderance of the evidence, the Court [found] that Bea did tell Carla that she was giving the Palm Drive House to her." It found that equitable estoppel barred the Hollfelders' statute of frauds defense, especially with respect to Bea, because the Gutierrezes made substantial improvements to the Palm house, about which Bea knew and which she encouraged. In addition, Carla "acted above and beyond her employment position" by completing extra tasks for Bea.

The court explained that a trustee may convey trust property without the consent of the other spouse unless the trust instrument provides otherwise, citing section 761, subdivision (a) and section 1102, subdivision (a). It also cited the Law Revision Review Comments to that statute for the proposition that "'the trustee may manage the trust community property in the same manner as other trust assets, free from the general limitations on disposition of community property imposed on spouses, unless the trust expressly provides such limitations.'" (See 23 Cal. Law Revision Com. Rep. (1993) p. 152, reprinted in Deering's Ann. Cal. Fam. Code (2006 ed.) foll. § 761, p. 267.) Since the trust document was not produced during discovery or offered into evidence, the court apparently assumed that it did not require the consent of both spouses, and since both Bea

9

and Tom were trustees of the Hollfelder Family Trust which held title to the Palm house, Bea could dispose of the trust property without Tom's consent. In any case, the court found Tom was estopped, regardless of the requirements of the trust instrument. It wrote that the "'nonconsenting spouse's set-aside remedy may be subject to an estoppel defense.'" The evidence suggested Tom knew that the Gutierrezes had completed work on the house and had wanted to replace the roof and windows, but had done nothing to stop them or require they seek his permission. As a result, the court found the Hollfelders were estopped from asserting section 1102 as a defense to the gift.

The court granted the Gutierrezes' request to quiet title in their favor. It ordered them to prepare, upon request, a statement of decision and a judgment pursuant to Code of Civil Procedure section 632. Eight days after the trial court's September 2009 decision, the Hollfelders filed a request for a statement of decision, seeking several findings. In October 2009, the Gutierrezes filed a proposed statement of decision, which stated that "by clear and convincing evidence . . . Bea did tell Carla that she was giving the Palm Drive House to Carla." In the meantime, Judge Chirlin had retired, and the Hollfelders filed a motion for mistrial and new trial, arguing she had failed to sign a statement of decision.

In November 2009, Judge Chirlin returned to deny the Hollfelders' motion for a new trial, and scheduled a hearing on their objections to the proposed statement of decision. During the hearing, the court stated that clear and convincing evidence supported its finding that Bea told Carla she was giving her the Palm house. The Hollfelders argued that the court had not actually used the clear and convincing evidence standard, since its September 2009 order indicated it made findings by a preponderance of the evidence. They also claimed that the Gutierrezes had failed to satisfy their burden of showing that the trust instrument allowed for a unilateral conveyance of property.

The court signed the proposed statement of decision and judgment in December 2009, adopting the "clear and convincing evidence" language. It stated that both Bea and Tom were estopped from asserting a statute of frauds defense, since Bea knew about

10

most of the work that the Gutierrezes had done to the Palm house, while Tom knew of at least some of it. The court stated that Carla had "acted above and beyond her employment position," for which she was not compensated. Regarding estoppel to assert that section 1102 prohibited a unilateral gift of trust property, the court noted that the trust instrument was not presented for admission into evidence at trial, and that the Hollfelders had refused to produce it during discovery. It reiterated that a nonconsenting spouse's set-aside remedy may be subject to estoppel. As a result, both Bea and Tom were estopped from asserting section 1102 as a defense. The court expressly made "no finding one way or another as to whether [the Gutierrezes] may proceed to trial on their non equitable causes of action for fraud, money had and received, wages, labor, and services."

The court ordered an accounting of gift taxes, insurance and property tax payments, and the monthly payments from the Gutierrezes to the Hollfelders. The Hollfelders were to be responsible for all gift taxes, but ordered the return of any portion of the Gutierrezes' monthly payments that exceeded the amount of the gift taxes, insurance, and property tax payments. The Hollfelders were to execute a grant deed to Carla, who no longer needed to submit monthly payments to them. The court ordered that the Gutierrezes were entitled to a judgment quieting title in the Palm house in their favor. It also granted injunctive relief against the Hollfelders to prevent them from proceeding with their unlawful detainer action against the Gutierrezes. Finally, the court imposed a constructive trust over the property, and denied the Hollfelders' cross-complaint for ejectment.

In January 2010, the Hollfelders filed a motion to set aside and vacate the judgment pursuant to Code of Civil Procedure section 663. At the subsequent hearing in February 2010, the Hollfelders' attorney argued that the judgment violated the one judgment rule since it granted relief not pled or proven at trial. In addition, the judgment was premature because legal issues remained to be tried. The Gutierrezes argued that an exception to the one judgment rule allowed the court to grant equitable relief in a

11

property dispute, and since all of the equitable issues regarding the Palm house were resolved and the ejectment cross-complaint was denied, the judgment was final.

During the subsequent motion hearing, the court said it had carefully decided the case, and found no authority to support the Hollfelders' claim that section 1102 barred the gift. It denied both of the Hollfelders' motions, and entered judgment as of December 21, 2009. The Hollfelders were served with notice of the judgment on February 16, 2010. On the same day, they filed a notice of appeal regarding the December 2009 judgment and the February 2010 order denying their motion to vacate judgment. In March 2010, the court accepted the Hollfelders' deposit of the grant deed pursuant to Code of Civil Procedure section 917.3, effectively staying the judgment.

## DISCUSSION

### I

After a bifurcated trial on the equitable claims in the Gutierrezes' complaint and the Hollfelders' cross-complaint, the court issued a judgment without deciding the parties' remaining legal claims. The Gutierrezes' complaint raised claims for fraud, conversion, money had and received, and reimbursement for wages, labor, and services. The Hollfelders' cross-complaint included claims for breach of oral rental agreement and a promissory note, constructive fraud, money had and received, and money lent. Given these unresolved legal claims, we asked the parties to submit supplemental briefing on whether the court's "judgment" on the equitable claims was appealable. They have done so.

Civil Code section 904.1 limits the judgments and orders from which an appeal may be taken. (See Code Civ. Proc., § 904.1.) It allows for appeals only from "final" judgments. (See Code Civ. Proc., § 904.1, subd. (a)(1).) Accordingly, "an appeal cannot be taken from a judgment that fails to complete the disposition of all the causes of action between the parties even if the causes of action disposed of by the judgment have been ordered to be tried separately, or may be characterized as 'separate and independent' from those remaining. . . . A petition for a writ, not an appeal, is the authorized means

12

for obtaining review of judgments and orders that lack the finality required by Code of Civil Procedure section 904.1, subdivision (a)." (*Morehart v. County of Santa Barbara* (1994) 7 Cal.4th 725, 743-744 (*Morehart*) [finding judgment not appealable where it did not complete disposition of all causes of action].) In *Morehart*, the court considered the appeal as a petition for writ of mandamus because both parties strongly urged the court to consider the merits of the appeal, and the issue remained a matter of continuing public interest. (*Id.* at pp. 744, 746-747.)

We do not agree with the Gutierrezes' argument that the trial court's determination of the equitable causes of action falls within an exception to the one judgment rule of Code of Civil Procedure section 904.1. First, they claim that Code of Civil Procedure section 1060 makes a judgment final when it declares the rights and duties of an individual "over or upon property." (Code Civ. Proc., § 1060 ["[T]he declaration shall have the force of a final judgment."].) However, no published case cited to us or that we have found interprets this declaratory relief statute as an exception to the one judgment rule. Second, the Gutierrezes contend that California Rules of Court, rule 3.1591, which governs when a court must announce a statement of decision or proposed judgment, permits courts to issue appealable interlocutory or separate judgments. But the rule does not concern appealability. Cases interpret it as requiring courts to issue statements of decision, with no treatment of the one judgment rule. (See, e.g., *Gould v. Corinthian Colleges, Inc.* (2011) 192 Cal.App.4th 1176, 1181.) There is generally no right to appeal after interlocutatory judgments, even if properly entered pursuant to California Rules of Court rule 3.1591. (See Code Civ. Proc., § 904.1, subd. (a).) Finally, the Gutierrezes contend the trial court's judgment is appealable because it had the "'effect of a final determination of property rights.'" (*International Typographical Union etc. Pension Plan v. Ad Compositors, Inc.* (1983) 142 Cal.App.3d 733, 735, quoting *Degnan v. Morrow* (1969) 2 Cal.App.3d 358, 365 (*Degnan*).) However, the Gutierrezes quote a portion of that case in which the court was merely summarizing a party's argument, and the authority cited therein applies only to property partitions, which are specifically

13

appealable pursuant to statute. (See *Degnan*, *supra*, at p. 363.) By contrast, no statute expressly authorizes the finality of the court's adjudication of the parties' equitable claims alone.

Nevertheless, both the Hollfelders and the Gutierrezes urged us to reach the merits of the appeal. In their brief, the Hollfelders suggest that we consider their appeal as a petition for writ of mandamus, if necessary. The Gutierrezes agree in their supplemental briefing. In addition, the Palm house property has been tied up since at least March 2010, when the Hollfelders deposited a deed with the court. Pursuant to *Morehart*, we shall treat the present appeal as a petition for writ of mandamus. We do not decide the parties' remaining legal claims, since they have not yet been determined. "[I]n a case involving both legal and equitable issues, the trial court may proceed to try the equitable issues first, without a jury . . . , and . . . if the court's determination of those issues is also dispositive of the legal issues, nothing further remains to be tried by a jury." (*Raedeke v. Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 671.) Our decision here renders moot some, but not all, of the parties' legal claims, which remain to be tried.

II

The principal issue before us is whether Tom is estopped from disclaiming the alleged gift of the Palm house. The Hollfelders contend the gift does not survive the statute of frauds because no substantial evidence supported the trial court's conclusion that Tom was estopped. We agree.

"When the trial court has resolved a disputed factual issue, the appellate courts review the ruling according to the substantial evidence rule. If the trial court's resolution of the factual issue is supported by substantial evidence, it must be affirmed." (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632.) We consider the evidence in the light most favorable to the prevailing party. (*Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1188.)

It is undisputed that no writing supported the gift of the Palm house to Carla. The Hollfelders did not memorialize the transfer, and the Gutierrezes did not ask for written

14

verification.  Absent a writing conveying title, an oral conveyance of real property is barred by the statute of frauds.  (Civ. Code, § 1624, subd. (a)(3).)  "Courts, however, 'have the power to apply equitable principles to prevent a party from using the statute of frauds where such use would constitute fraud.'"  (*Chavez v. Indymac Mortgage Services* (2013) 219 Cal.App.4th 1052, 1057-1058.)  """The doctrine of estoppel has been applied [to preclude the use of a statute of frauds defense] where an unconscionable injury would result from denying enforcement after one party has been induced to make a serious change of position in reliance on the contract or where unjust enrichment would result if a party who has received the benefits of the other's performance were allowed to invoke the statute."'  [Citation.]"  (*Id.* at p. 1058; see also Evid. Code, § 623.)  Only clear and convincing evidence may rebut the presumption that the holder of legal title is entitled to full beneficial title of a property.  (Evid. Code, § 662; *Andreotti v. Andreotti* (1964) 224 Cal.App.2d 533, 538-539 [finding clear and convincing evidence is required to support estoppel exception to statute of frauds].)

The evidence does not support the trial court's finding that Tom was estopped from disclaiming the gift as barred by the statute of frauds.[4]  The trial court found that Tom was estopped because he knew about improvements made by the Gutierrezes and did nothing to stop them.  But there is no evidence that Tom knew of any improvements before they occurred.  He denied talking with Bea about the Gutierrezes' repairs and improvements.  Further, Tom did not remember visiting the property between 1994 and 2006, and testified that he did not know of any improvements during that time.  Tom only remembered visiting the property sometime in 2007, *after* the Gutierrezes filed their claim and the Hollfelders had sought to evict them.

---

[4]     Because we find no substantial evidence on the estoppel issue, we need not reach the Hollfelders' claims that the alleged gift also failed for lack of certain and definite terms; the payment of rent precluded the gift; Bea failed to display a present intent to transfer ownership of the property when allegedly giving it to Carla; and even if the Hollfelders were estopped from asserting the statute of frauds, the Gutierrezes' monetary benefit allegedly exceeded their detriment.

15

The only evidence presented at trial to demonstrate that Tom knew about the Gutierrezes' improvements was a conversation in October or November 2006.[5] Carla and Rodolfo testified that they told Tom about improvements they had made to the house, including fixing the floor, changing the kitchen, and repairing the outside pavement. They also told him that they wanted to replace the roof and windows. Tom responded, as would a landlord, asking if the roof was leaking, and why Carla wanted to replace the windows. Then, he encouraged Rodolfo to find an affordable worker, perhaps a friend of the Gutierrezes, to replace the roof. Tom also offered to pay half of the roof repair bill. Standing alone, the Gutierrezes' account of this conversation is not substantial evidence that Tom was estopped from disclaiming a gift of the entire house. The repairs to the floor, kitchen, and pavement already had occurred by the time he learned of them. Additionally, Tom did not encourage the Gutierrezes to replace the windows, and offered to pay for part of the roof repair. Most significant is the absence of any evidence that any of the parties, or anyone else, told him of Bea's purported gift of the house to Carla. The trial court erred in finding an exception to the Hollfelders' statute of frauds defense.

### III

The Hollfelders also claim that Tom's lack of consent to the gift rendered it unenforceable under section 1102, subdivision (a) and section 761, subdivision (a). They contend the Gutierrezes had the burden of producing evidence showing an exception to this affirmative defense.

Section 1102, subdivision (a) requires both spouses to join in any conveyance of real property held by the community, except as provided in section 761. (§ 1102, subd. (a).) Section 761 states that "[u]nless the trust instrument or the instrument of

---

[5] The Gutierrezes cite additional evidence from Rodolfo's earlier deposition, submitted during the hearing on the motion for summary judgment. In his deposition, Rodolfo said Tom visited the Palm house sometime before 2007. But Rodolfo testified at trial, and his deposition was not admitted into evidence pursuant to Code of Civil Procedure section 2025.620, subdivision (c).

16

transfer expressly provides otherwise," community property is subject to the alienability limitations of section 1102, subdivision (a). (§ 761, subd. (a).) In other words, "a transfer in trust by a married person is not exempt from the general limitations on transfers and transmutations by married persons acting alone." (23 Cal. Law Revision Com. Rep. (1993) p. 152, reprinted in Deering's Ann. Fam. Code (2006 ed.) foll. § 761, p. 267.) Once a defendant demonstrates an affirmative defense at trial, the burden shifts to the plaintiff to show an exception. (See *Acosta v. Glenfed Development Corp.* (2005) 128 Cal.App.4th 1278, 1292-1293 [plaintiff's burden of production to demonstrate willful misconduct, to overcome statute of limitations affirmative defense at trial, is same at summary judgment stage].)

By providing evidence of the Palm house's origins as community property held by their family trust, and Tom's lack of consent, the Hollfelders demonstrated an affirmative defense under section 1102, subdivision (a). The burden shifted to the Gutierrezes to present a trust instrument that allowed one spouse to unilaterally alienate trust property, pursuant to section 761, subdivision (a). After the Gutierrezes sought a court order compelling the Hollfelders to produce the trust instrument, the court ordered the Hollfelders to submit a statement that the trust did not expressly include a gift to Carla, which they did. The Gutierrezes did not seek an in-camera review of the instrument, or any other measure by which the court could have reviewed the trust instrument. Regardless, the relevant portion of the trust instrument, which the Hollfelders presented during the summary judgment proceedings, required both spouses' consent for any transfer of community property. In light of this, the Gutierrezes would have been unable to satisfy their burden.

Finally, because we reverse the trial court's judgment, we do not decide the Hollfelders' other claims that specific performance was not justified where money damages could compensate the Gutierrezes; the judgment awards relief not prayed for or raised during trial; the court applied the incorrect standard of proof; the court erred in

17

denying posttrial motions and the Hollfelders' motion for summary judgment; and the Gutierrezes forfeited several arguments by failing to address them in their brief.

As we noted at the outset, we decide only the parties' equitable claims, not their legal claims. The latter consists of the Gutierrezes' action for fraud, conversion, money had and received, and reimbursement for wages, labor, and services, and the Hollfelders' cross-complaint for breach of an oral rental agreement and a promissory note, and for constructive fraud, money had and received, and money lent. These claims remain for resolution in further proceedings.

## DISPOSITION

The petition is granted. The trial court is directed to set aside its earlier ruling finding a valid gift of real property, enter a new ruling that Tom Hollfelder's lack of consent precluded Bea Hollfelder's attempted conveyance of the property, reinstate the Hollfelders' cause of action for ejectment, and conduct a trial on the parties' remaining claims not forfeited or rendered moot by this decision. The Hollfelders are entitled to their costs in this appellate proceeding.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EPSTEIN, P. J.

We concur:

MANELLA, J.                                              EDMON, J.*

18

_____

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.